Kelly K. LoCascio, Esq., SBN 022793
Randy A. McCaskill, Esq., SBN 024472
8014 E. McClain Drive, Suite 220
Scottsdale, Arizona 85260-1329
Telephone:  (877) 264-3570
Facsimile: (888) 247-4023
klocascio@angelmedflight.com
rmccaskill@angelmedflight.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AVIATION WEST CHARTERS, INC. as successor in interest to ANGEL JET SERVICES, LLC, an Arizona limited liability company, and as assignee of Jane Doe,<br><br>Plaintiff,<br><br>v.<br><br>ADMINISTAFF GROUP HEALTH PLAN; and ADMINISTAFF OF TEXAS, INC., a Texas corporation; UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation,<br><br>Defendant. | Case No:<br><br>**COMPLAINT** |

For its Complaint against Defendants Administaff Group Health Plan (the "AGHP") Administaff of Texas, Inc. ("Administaff"), and UnitedHealthcare Insurance Company ("UHC"), Plaintiff Aviation West Charters, Inc. states and alleges as follows:

1

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), pursuant to 29 U.S.C. §§ 1132(e) and (f) and 28 U.S.C. § 1331.

2. Venue is proper under 29 U.S.C. § 1132(e) because Defendants are found, and this matter arises from events, occurring in this District.

**PARTIES**

3. Plaintiff Aviation West Charters, Inc. is a Colorado Corporation with its principal place of business in Scottsdale, Arizona and is the successor in interest of Angel Jet Services, LLC ("AWC").

4. Defendant AGHP does business in the State of Arizona. On information and belief, AGHP provided health insurance benefits to Jane Doe[1] pursuant to an Employee Health Benefit Plan as defined by ERISA, 29 U.S.C. § 1002 ("Plan"). At all relevant times, Jane Doe was a participant and beneficiary of the Plan, and is entitled to benefits thereunder.

5. Defendant Administaff does business in the State of Arizona. On information and belief, Administaff is the plan administrator and "named fiduciary" of the Plan pursuant to 29 USC § 1133(2).

6. UHC does business in the State of Arizona and assigned Claim No. 3305742801 to the underlying claim in this matter. UHC issued a Certificate of Coverage ("Certificate") wherein it assumed all discretionary authority and control over the reimbursement at issue in this matter. As such, UHC is a *de facto* plan administrator and a "deemed fiduciary" pursuant to 29 USC § 1002(21)(A).

7. Jane Doe appointed AWC her authorized representative and she assigned her

---

[1] In compliance with HIPAA, the true name of the beneficiary is withheld and will be provided to Defendants outside of the publicly filed pleadings.

2

health care benefits under the Plan to AWC and AWC is her authorized Representative for the benefits sought herein.

## FACTUAL ALLEGATIONS

8. AWC is a worldwide fixed-wing air ambulance service provider. AWC utilizes medically customized specialty Learjets to transport patients. AWC's services include flight and ground transport logistics, insurance benefit review, patient assistance and advocacy, coordination between sending and receiving medical providers, and transportation from one facility to another facility under the care of trained professional critical care medical service providers (including critical care nurses) throughout the entire transport.

9. At the time relevant hereto, Jane Doe was a 33-year-old female with an extensive history of co-morbid psychiatric conditions and suicide attempts.

10. In April 2011, Jane Doe attempted suicide while she was in Ohio to visit her son. Jane Doe was initially admitted to Grove City Medical Center for treatment. Thereafter she was transferred to Millcreek Community Hospital in Erie, Pennsylvania for a behavioral health assessment.

11. At Millcreek Community Hospital, Jane Doe was diagnosed with a mood disorder, borderline personality disorder, catastrophic psychosocial stressors including suicide, homicidal mediation with intent, and a Global Assessment of Functioning ("GAF") of 5/100 indicating that she was a "persistent danger of severely hurting self or others (e.g., recurrent violence) or persistent inability to maintain minimal personal hygiene or serious suicidal act with clear expectation of death noting that she was a persistent danger of severely hurting self or others."

12. Jane Doe's treating physicians at Millcreek Community Hospital developed a plan for care and management of her diagnosis, taking into consideration her dangerous GAF

score, which included transfer to West Oaks Hospital in Houston, Texas via air ambulance.

13. Thereafter, AWC was contacted to provide Jane Doe the air ambulance transport.

14. AWC sought preauthorization from UHC for Jane Doe's air ambulance transport. UHC granted preauthorization on May 26, 2011, along with a gap exception for fixed-wing transport specialty care and ground transport (notification number 490 631 2001) and guarantee of "in-network" pricing.

15. In reliance on UHC's gap exception and pre-authorization for fixed-wing specialty transport, AWC arranged for Jane Doe's air ambulance and all necessary ground transports from the Millcreek Community Hospital to West Oaks Hospital in Houston, Texas.

16. On May 28, 2011, the AWC medical team arrived on site at the mental health unit of Millcreek Community Hospital to transport Jane Doe. Upon AWC's arrival, Jane Doe's physician administered sedation medication for the purpose of controlling anxiety and agitation during the transport for her safety and the safety of the crew. Thereafter, Jane Doe was moved by the Millcreek Community Hospital staff out of the locked unit and patient care was transferred to the AWC critical care medical team.

17. AWC escorted Jane Doe via ground ambulance to Tom Ridge Field in Erie, Pennsylvania where she was loaded onto AWC's specially equipped Lear Jet 35A air ambulance and flown to George Bush Intercontinental Airport in Houston, Texas. Once on the ground, AWC loaded Jane Doe into a ground ambulance and transported her to West Oaks Hospital where care was turned over to its medical staff.

18. Pursuant to authorizations received from Jane Doe, AWC submitted a CMS-1500 Claim Form to UHC on June 6, 2011 (the "Claim Form"). The Claim Form requested reimbursement in the amount of $307,785.00 for the services rendered.

19. Pursuant to the AGHP's Summary Plan Description ("SPD"), "[i]f a claimant makes a post-service benefits claim, the claimant has a right to know the Claims Administrator's denial within 30 days."

20. On August 17, 2011, UHC issued its first Explanation of Benefits ("EOB") erroneously stating that AWC had billed $159,785.00 for services and stating that the allowed amount was $7,967.10. The EOB provided a non-specific remark for the reduced payment stating that "[a] non-network healthcare provider or facility provided the services. Your claim has been paid based on your benefit plan, which uses rates established by the federal government for the Medicare program. If no Medicare rate applies to the services, your claim was paid based on another available source developed by us or our affiliate or by an outside entity…"

21. The first EOB, treating AWC as a non-network provider despite the gap exception preauthorization, contained an explanation as to the amount paidstating that "[p]ayment of benefits has been made in accordance with the terms of the managed care system." Attached to the first EOB was a check made payable to AWC in the amount of $7,967.10.

22. On August 22, 2011, UHC issued its second EOB. This time, UHC alleged a new claim due to UHC breaking AWC's claim up into two arbitrary claims. The second EOB provided the same non-specific explanations for the reduced payment as the first EOB and attached a check made payable to AWC in the amount of $7,092.80. The second EOB contained no explanation as to why UHC had split AWC's claim and processed two separate payments for a fraction of the full-billed charges.

23. Pursuant to the terms of the SPD, if an initial claim for Plan benefits is denied in whole or part, the claimant is entitled to receive, among other things, the specific reason or

5

reasons for the denial, a reference to the specific Plan provision on which the denial was based, description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why the information is necessary, and the specific rule, guideline, protocol or similar criteria relied upon in making the determination along with a statement of how it was relied upon.  The SPD also requires that a claimant receive copies of all documents, records and other information relevant to the claim for benefits.

24. As Jane Doe's authorized representative, AWC submitted a document request to UHC requesting, among other things, a complete copy of the claim file and all documents UHC relied upon in making its decision to only partially pay the claim.  UHC did not respond to the request.

25. Thereafter on September 27, 2011, AWC, as Jane Doe's authorized representative, submitted a document request to Administaff for, among other things, a copy of the plan and all controlling documents, a complete copy of the claim file, and all documents relied upon in making the decision to only partially pay the claim.

26. In response, Administaff produced a copy of the SPD, Certificate, and other controlling documents, but did not provide any documents related to the actual benefit determination of Jane Doe's claim.

27. In accordance with the SPD and the Certificate, on February 17, 2012, AWC propounded its comprehensive First Appeal on UHC challenging the reimbursement amount paid.

28. On February 24, 2012, UHC sent AWC a letter confirming it had received the First Appeal on February 28, 2012.  The letter also stated that "we will complete our review and send you a letter about our decision within 30 days from the date the written complaint or one-page complaint form is received."

6

29. This letter is consistent with the SPD and Certificate which requires that an appeal be responded to within 30 days of receipt.

30. On March 23, 2012, UHC sent Jane Doe a letter stating that it had received the appeal and determined that it "should be directed to United Behavioral Health." The letter went on to state that the appeal had been forwarded to the appropriate department for review and that "you will receive a response to your issues shortly."

31. On May 4, 2012, having heard nothing further from UHC, AWC called UHC and spoke with representative Ginia (49089) who stated the appeal was denied on March 23, 2012 as a duplicate. Certain that this information was inaccurate, AWC asked to speak with someone else. Ginia then stated that AWC needed to speak with Behavioral Health and transferred AWC eventually to a representative named Natalie who stated the appeal had been mailed to the wrong address. Natalie then asked that AWC fax a copy of the appeal to her.

32. AWC faxed a copy of the appeal to Natalie at UHC immediately thereafter.

33. On May 15, 2012, AWC again called UHC Behavioral Health to inquire about the status of the appeal. AWC spoke with a representative named Gabrielle who stated that Natalie was still reviewing the appeal and that it could take up to 30 days. Gabrielle confirmed that Natalie received the fax of the appeal from AWC on May 4, 2012.

34. Following an additional call on June 1, 2012, AWC called UHC Behavioral Health on June 5, 2012 and spoke with a representative named Lacoria. Lacoria stated that the appeal had been forwarded back to UHC Medical on May 15, 2012 with no determination.

35. AWC then called UHC Medical and spoke with representative Penny (84617) who stated that there was nothing in the Medical system after February 29, 2012. She stated

7

that the appeal had been sent to Behavioral Health on March 23, 2012.

36. After a series of additional calls that same day, AWC spoke with onshore Supervisor Ben (call reference #C21571637552079) who stated that the last thing he could see was that the appeal had been sent to Behavioral Health and that it made no sense to him how the appeal was being processed. Ben promised that AWC would receive a call from Ben's supervisor Jeremy within 24 hours.

37. The following day on June 6, 2012, AWC received a call from Rachel at UHC Medical (call reference #C21581356118679) stating that she was able to see the appeal, it had been now routed back to Medical and was being sent to the escalation team for review. She also stated that AWC should receive a call from a resolution specialist within two business days with a status of the appeal.

38. Once again no one from UHC called AWC. Accordingly, AWC contacted UHC on June 14, 2012, almost four months after the appeal was originally submitted, regarding the status of the appeal. AWC spoke with a medical claims representative Michael C. who stated that the most recent note indicated that the appeal had been routed to somebody else. Because he was unable to provide any further information, Michael agreed to put a note in the system requesting an immediate call from a representative with knowledge of the situation.

39. Later that day AWC received a call from Beth in Medical (call reference #C21581356118679) who stated that UHC <u>would not be making a determination and would not issue a written response to the appeal</u>. Beth further stated that AWC would have to submit a second appeal in order for the determination on partial payment to be reviewed. Beth admitted that UHC's position made no sense and was unreasonable.

40. True to Beth's word, UHC refused to issued a response to the appeal. As a

8

result, AWC's administrative remedies were deemed exhausted.

41. AWC has satisfied all of the jurisdictional perquisites, including exhaustion of administrative remedies, to filing a claim in federal court.

## COUNT I
## RECOVERY OF INSURANCE AND PLAN BENEFITS – ERISA

42. AWC incorporates and realleges each and every allegation contained in Paragraphs 1 through 41 as if set forth fully herein.

43. A participant is entitled to recover benefits under the terms of the plan, to enforce rights under the terms of the plan, and to clarify rights to future benefits under the terms of the plan subject to 29 U.S.C. § 1132(a)(1)(B).

44. A civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan subject to 29 U.S.C. § 1132(a)(3).

45. Defendants breached their fiduciary duty to their insured when they failed to honor their preauthorization, adhere to the Plan in calculating the reimbursement amount due to AWC, or follow ERISA guidelines when administering the claim.

46. Defendants further breached their fiduciary duty to their insured when they failed to provide a specific explanation, supporting documentation, or otherwise engage in a meaningful dialogue as to how they reached their reimbursement rate of $15,059.90 for an air ambulance transport that spanned 1,201 statute miles.

47. Defendants again breached their fiduciary duty to their insured when it openly refused to process the insured's appeal.

48. AWC is entitled to recover its full-billed charges for the services provided, together with attorneys' fees and costs;

9

**WHEREFORE,** AWC demands judgment against Defendant:

    A.    Declaring that AWC is entitled to payment of services rendered to Jane Doe in the amount of $292,725.10 as a result of Defendant's violation of the terms of the Plan and ERISA;

    B.    Awarding pre-judgment interest to AWC at the highest rate allowable by law;

    C.    Awarding AWC reasonable attorneys' fees and costs pursuant to state law and ERISA § 502(g); and

    D.    Awarding AWC further relief as the court deems just and proper.

DATED this 8th day of March, 2013.

By s/ _____
Kelly K. LoCascio, Esq.
Randy A. McCaskill, Esq.
8014 E. McClain, Suite 220
Scottsdale, Arizona 85260
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

s/  Cheri M. Lord

4836-7567-7715, v.  1