WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aviation West Charters Incorporated, as successor in interest to Angel Jet Services, LLC, an Arizona limited liability company, and as assignee of Jane Doe,<br><br>Plaintiff,<br><br>v.<br><br>Administaff Group Health Plan; and Administaff of Texas, Inc., a Texas corporation; and United Healthcare Insurance Company, a Connecticut corporation,<br><br>Defendants. | No. CV-13-00563-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Aviation West Charters, Inc.'s Motion for Summary Judgment. (Doc. 21.) Pursuant to the Case Management Order (Doc. 18), the parties were required to produce and submit a Joint Administrative Record for this Court's use in the review of the benefits determination in this ERISA action. Defendant's filed a notice that they had timely disclosed an initial copy of that record as required (Doc. 19) but apparently Aviation West did not respond to that record, or propose any additions or omissions. Unable to file a joint Administrative Record, the Defendants submitted the Administrative Record they disclosed to Aviation West. (Doc. 20.) Aviation West did not object to the submitted Administrative Record, submitted nothing additional for the Court to consider, and requested no discovery. Aviation West's Statement of Facts included exhibits that are almost all excerpts from the Administrative

1 Record submitted by Defendants. The only new evidence submitted is an affidavit attached to the Reply about whether a person worked for Aviation West. (Doc 25-1.) Therefore, the Court will treat the Administrative Record submitted by Defendants, and the extra affidavit, as the full and complete record for review in this case.

The Case Management Order also set a briefing schedule for an opening, response, and reply brief. (*Id.*) Instead, Aviation West submitted a Motion for Summary Judgment (Doc. 21) and a Statement of Facts (Doc. 22). Defendants responded to the Motion for Summary Judgment (Doc. 23) and submitted their own Statement of Facts (Doc. 24). Aviation West then replied. (Doc. 25.) Nevertheless, the parties followed the deadlines established for the briefing schedule and focus their arguments on the standard of review for ERISA actions by this Court. Therefore, this Court will treat these motions as briefs in this review of the ERISA determination of benefits.[1]

The Court now turns to the merits of this challenge to the ERISA determination made by Defendants. The request for Oral Argument is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir.1991). For the reasons explained below, the benefits determination is affirmed because Aviation West fails to establish that Defendants abused their discretion in reaching their determination.

## BACKGROUND

This action challenges the amount paid by a medical insurance plan for the transportation costs of flying a patient from Pennsylvania to Texas. On May 28, 2011, Aviation West Charters Inc. ("Aviation West")[2] provided air ambulance services for a patient who was suffering from a number of severe psychological problems. Insperity

---

[1] Both sides also failed to conduct good faith settlement talks by October 15, 2013, or at least they failed to file a Joint Report on Settlement Talks within five days of that date as required by the Case Management Order.

[2] Aviation West brings this suit as successor in interest to Angel Jet Services, LLC ("Angel Jet") and some of the actions herein attributed to Aviation West were in fact performed by Angel Jet.

1  Group Health Plan f/k/a/ Administaff Group Health Plan, Insperity Holdings, Inc. f/k/a
2  Administaff of Texas, Inc., and United Healthcare Insurance Company (collectively
3  referred to as "Defendants") provided and administered the patient's health insurance.
4  Aviation West sought and obtained a prior authorization from Defendants before the
5  flight. (A.R. at 3.)

6  After the flight, Aviation West submitted a claim form to Defendants requesting
7  $307,785 in reimbursement. (A.R. at 1.) Defendants responded with two Explanations of
8  Benefits and made two payments on the claim in the amounts of $7,967.10 and
9  $7,092.80. (A.R. at 79–84.) The Explanation of Benefits both listed the "amount
10 charged," the amount "not covered," the "amount allowed," and the amount "paid to
11 provider." (*Id.*) The Explanation of Benefits each had remark codes of "ND" and "#"
12 which were defined in the "Remarks" section as follows:

> (ND) A non network health care provider or facility provided these services. Your claim has been paid based on your benefit plan, which uses rates established by the federal government for the Medicare program. If no Medicare rate applies to these services, your claim was paid based on another available rate source developed by us or our affiliate or by an outside entity. . . .
> (# ) Payment of Benefits has been made in accordance with the terms of the managed care system.

19 (*Id.*) Defendants issued these benefits determinations on August 17 and 22, 2011. (*Id.*)

20 Aviation West appealed the determinations on February 17, 2012 (A.R. at 67–76)
21 and Defendants acknowledged receipt of that appeal on February 24, 2012 (A.R. at 153–
22 60) and then on March 23, 2012, it indicated that it was transferring the appeal to another
23 department (A.R. at 1209–10). Aviation West alleges that Defendants have not otherwise
24 responded to the appeal (Doc. 22 at ¶ 32), but Defendants insist that they responded by
25 phone on June 14, 2012, and cite to a record of that call (A.R. at 638–39). On March 18,
26 2013, Aviation West initiated this action seeking full payment and accrued interest on the
27 billed total of $307,785. (Doc. 1.)
28 / / /

**DISCUSSION**

**I. Standard of Review**

"The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). When a plan administrator both determines eligibility and pays the claims, that creates a conflict of interest and courts should weight that conflict as a factor in determining whether the administrator abused its discretion. *Id.* The significance of that conflict is determined by the facts of each particular case. *Id.* The parties here agree that an abuse of discretion standard applies in this case.

An "abuse of discretion" occurs when the Court is "left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). A court "may not merely substitute [its] view for that of the fact finder," but must consider whether the plan administrator's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*

A plan administrator will not always prevail under this deferential standard of review, but "a plan administrator's decision will not be disturbed if reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010). A court's review will be "tempered by skepticism" when there is a conflict of interest and "if the administrator gave inconsistent reasons for a denial, failed to provide full review of a claim, or failed to follow proper procedures in denying the claim." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1492 (2013).

**II. Analysis**

    **1. Payment of the Claim**

Aviation West fails to demonstrate that Defendants abused their discretion in the way they paid the claim. Aviation West makes several arguments based on the language

1   of the insurance contract about why it should have been paid the full amount it billed. It
2   further argues that the language of the contract is confusing, circular, and misleading and
3   that all of that the ambiguity should be construed in its favor.

4   The relevant portions of the "Certificate of Coverage" insurance contract are as
5   follows. In the coverage tables, Ambulance Services are a provided benefit. The contract
6   states that in most cases Defendants will initiate and direct non-emergency ambulance
7   transportation, but if the patient is requesting such services, the patient should submit a
8   pre-authorization or else the Benefits paid will be reduced by as much as fifty percent.
9   (A.R. at 6.) For Network services, the policy pays one hundred percent of the Eligible
10  Expenses for emergency and non-emergency ambulance services by ground or air. (*Id.*)
11  For Non-Network services, the table says that it is "Same as Network." (*Id.*) In other
12  words, assuming a preauthorization is filed if need, whether the ambulance provider is a
13  Network or Non-Network provider, the insurance will always pay one hundred percent of
14  the Eligible Expenses.

15  The next step is to determine what the Eligible Expenses are. The contract defines
16  Eligible Expenses as follows:

> Eligible Expenses are the amount we determine that we will pay for Benefits. For Network Benefits, you are not responsible for any difference between Eligible Expenses and the amount the provider bills. For Non-Network Benefits, you are responsible for paying, directly to the non-Network provider, any difference between the amount the provider bills you and the amount we will pay for Eligible Expenses. Eligible Expenses are determined in accordance with our reimbursement policy guidelines, as described in the Certificate.
>
> For Network Benefits, Eligible Expenses are based on either of the following:
>
> • When Covered Health Services are received from a Network provider, Eligible Expenses are our contracted fee(s) with that provider.
>
> • When Covered Health Services are received from a non-Network provider as a result of an Emergency or as otherwise

> arranged by us, Eligible Expenses are billed charges unless a lower amount is negotiated.
>
> For Non-Network Benefits, Eligible Expenses are based on the following:
>
> • When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined at our discretion based on the lesser of:
>
> - Fee(s) that are negotiated with the Provider
> - 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market
> - 50% of billed charges
> - A fee schedule that we develop.
>
> • When Covered Health Services are received from a Network provider, Eligible Expenses are our contracted fee(s) with that provider.

(A.R. at 264–65.)

Here, the parties concede or the administrative record establishes many relevant facts. The patient was covered by the policy at the time of the transport and Aviation West sought and received a pre-authorization for the services from Defendants.[3] (Doc. 24 at 1–3.) Aviation West performed the air ambulance services and submitted a claim form for $307,785. (*Id.* at 5.) Defendants paid Aviation West two payments on the claim in the amounts of $7,967.10 and $7,092.80. (*Id.* at 8–9; A.R. at 79–84.) Aviation West submitted an appeal and received confirmation that the appeal was received, and later

---

[3] Even though Aviation West stated in both its Motion and Statement of Facts that it contacted the Defendants to seek a preauthorization (Doc. 21 at 2:9–11; Doc. 22 ¶ 9) it took issue with Defendants' brief for stating the same thing. (Doc. 25 at 2.) Apparently Defendants erroneously cited page 194 of the record and a phone call with Rebecca Sparks (*Id.*) Aviation West went so far as to attach an affidavit from a personal manager that Ms. Sparks was never an employee. (Doc. 25-1.) It appears that the correct record citation for the contact that Aviation West repeatedly admitted that it made should have been to pages 186 and 187 of the Administrative Record. In answer to Aviation West's other objection about these notes being from the wrong department, this citation indicates that Aviation West was contacting multiple of Defendants' departments including both Medical and Behavior Health.

- 6 -

was informed that the appeal was still being processed and was being transferred to another department. (Doc. 24 at 10–11.) Finally, there is no dispute that Aviation West was not a regular Network provider for Defendants with an ongoing contractual agreement regarding rates.

There is a dispute about who ordered or requested the transportation. This is important because under the definition of Eligible Expenses, "[w]hen Covered Health Services are received from a non-Network provider as a result of an Emergency or as otherwise arranged by us, Eligible Expenses are billed charges unless a lower amount is negotiated." (A.R. at 264.) This was not an Emergency transport and no lower amount was negotiated. If Defendants "otherwise arranged" for the transport, then there is a strong argument that the "Eligible Expenses are billed charges" and Defendants should have paid the full $307,785 billed. Aviation West alleges that the transport was ordered by the patient's doctor, but the Defendants allege that it was requested by the patient's husband. (Doc. 24 at 3.) The record provides some corroboration for both scenarios. (*See* A.R. at 3 (listing the doctor's name as "Ordering Provider"); A.R. at 183 (noting that the spouse wants to air taxi the member back and has the finances for it).)

Regardless of whether the doctor or the husband asked for the flight, it is still possible that Defendants "otherwise arranged" for it. Aviation West argues that the fact that it received a pre-authorization from Defendants indicates that Defendants were arranging the transport. However, Aviation West requested the pre-authorization. The contract indicates that the Defendants will usually initiate and arrange for transportation, but pre-authorizations only seem to be required when Defendants are not arranging the transportation and the patient is requesting it. Given this conflicting and underdeveloped record, Aviation West has not met its burden to show that Defendants abused their discretion by treating this as a flight requested by the patient and not otherwise arranged by Defendants.

Aviation West's other arguments about why it should have been paid the full billed amount have less merit. For example, Aviation West argues that it received a "gap

1  exception" or other guarantee of "in-network" pricing, but it only points to the pre-
2  authorization as evidence of this. As the Defendants correctly note, there is no such
3  language in the pre-authorization. (A.R. at 3.) Aviation West also argued that the second
4  Explanation of Benefits did not provide a basis for the benefits determination even
5  though the record establishes that it had the same remarks codes and remarks as the first
6  one did. (A.R. at 79–84.) Aviation West objects to the arbitrary division of its claim into
7  two Explanations of Benefits, but there is no indication of why this is relevant because
8  Defendants reviewed the entire and correct amount billed.

9  Finally, Aviation West argues that the language of the contract has ambiguities
10 that must be construed in its favor. Its argument is that because the amount of Eligible
11 Expenses covered for Non-Network, Non-Emergency air ambulance is "Same as
12 Network" that everything about the way they are paid must be the same. (A.R. at 6.) It is
13 clear from the contract that the percentage of Eligible Expenses covered is what is meant
14 by the "Same as Network." Both are one hundred percent. That does not change the
15 definition of what Eligible Expenses are, and that definition varies for in and out of
16 network providers. (A.R. at 264–65). That definition references both Medicare fee
17 schedules and schedules that the Defendants develop which is consistent with the
18 explanation provided in the Remarks of the Explanation of Benefits. Aviation West has
19 not met its burden to show that Defendants abused their discretion in reaching the fee
20 determination. This is true even after considering the decision with skepticism as required
21 by *Harlick* because of the conflict of interest.

### 2. Proper Procedures and a Full and Fair Review.

23 Aviation West next argues that because Defendants did not follow proper
24 procedures or provide a full and fair review, additional skepticism is warranted in
25 applying the abuse of discretion standard. Although *Harlick* would call for skepticism in
26 such circumstances, Aviation West fails to establish from the record that either of these
27 allegations is true.

28 / / /

1 First, Aviation West has not demonstrated that Defendants failed to follow proper procedures. Its argument is that the Summary Plan Description provides that any denial, in whole or in part, will be accompanied by a specified basis for the denial and specific information about how the claimant can perfect the claim. Here there is no serious dispute about whether the claim was accepted and paid, the dispute is whether the amount paid was appropriate. Furthermore, the payments that were made included an explanation of why they were paid the way they were. Aviation West has not demonstrated that any claim was denied, or that Defendants failed to provide an adequate explanation of their decision about the amount it did pay.

Second, Aviation West has not demonstrated that Defendants failed to provide a full and fair review. Its argument is that although Defendants acknowledged receipt of the appeals, they never responded. In their briefing, Defendants counter that they did respond by a phone call on June 14, 2012, and they cite to a record of that call. (Doc. 20-2 at 638–39.) Defendants concede that they had some internal confusion in processing the appeal and that the response took longer than the permissible time period. However, Aviation West does not argue that the review was improper because it was late. Aviation West only argues that Defendants never responded, and Aviation West did not rebut Defendants' documented assertion that they did respond. Accordingly, the record supports Defendants claim that they responded, and therefore, Aviation West cannot establish an abuse of discretion on the ground that no review was granted.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 21), is treated as an opening brief and this Court **affirms** the determination of benefits.

/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS FURTHER ORDERED** that the Clerk of the Court terminate this action and enter judgment accordingly.

Dated this 5th day of March, 2014.

*A. Murray Snow*
G. Murray Snow
United States District Judge